THE NATOMA WATER & MINING CO. v. CLARKIN et als.

In a complaint in ejectment, parties may seek, in addition to a recovery of the premises, an injunction restraining the commission of trespass in the nature of waste pending the action, but the grounds of equity interposition should be stated subsequently to, and distinct from, those upon which the judgment at law is sought.

Where plaintiffs, having excepted to the ruling of the Court excluding certain evidence, take, in consequence of such ruling, a nonsuit, with leave to move to set it aside, they do not waive any of their rights as to the exception taken. Objections to the introduction of evidence confined, in the Appellate Court, to the grounds taken below.

A duly certified copy of a Mexican grant, from the U. S. Surveyor-General's office, is admissible in evidence, against the objection that the absence of the original is not accounted for. But it is admissible only when the original itself would be. The statute (Acts of 1857, p. 317,) simply removes the objection to the copy as secondary evidence.

A certificate of the Surveyor-General, that the paper "is a true and accurate copy of a document" on file in his office, is sufficient, against the objection, that the copy is not duly authenticated, it being conceded that such document was the original grant.

In ejectment on a Mexican grant, the decree of the Land Commission confirming it, rendered final by the withdrawal on the part of the United States of any appeal therefrom, and an order of the District Court permitting the claimant to proceed thereon as on final decree, are conclusive evidence of the validity of the grant, of its recognition by the United States, and also of the location of the specific quantity granted—the decree in the case confining the claim under the grant, to a particular tract, describing it with specific boundaries.

Such a decree and order, in connection with the grant, are as conclusive as to the title of plaintiffs as a patent, provided the premises are within the designated boundaries.

A patent could have no greater effect upon the title; the patent would save the parties the necessity of proving anything beyond it, and limit the evidence in the case to matters arising upon mesne conveyances under the original grantee, but so far as the title is concerned—the boundaries of the land being given—its segregation in other words from the public domain being made by the decree itself, nothing further could be required.

The privilege of moving for a dissolution of an injunction upon the filing of an answer, is limited to cases where the injunction is originally granted without notice.

Where the injunction is granted on a rule to show cause, it cannot be dissolved until the final hearing, unless the right to apply for dissolution on filing the answer, be expressly reserved.

Cutting, destroying, and removing, growing timber, is sufficient ground for an injunction, without any allegation of insolvency.

In suits for the possession of land by ditch companies, incorporated under the Act of April 14th, 1853—by the fourth section of which they are authorized "to purchase, hold, sell, and convey, such real and personal estate as the purposes of the corporation shall require"—the defendants cannot question the necessity of such land for the purposes of the corporation. That is matter between the government and the corporation.

APPEAL from the Sixth District.

Clarkin and some of the defendants, in their answer aver, that plaintiffs are not a legal corporation ; that the land in suit is not necessary for the purposes of such corporation, if it exist; and, that defendant, Clarkin, has been in the actual possession of a portion of the land since 1850, and has not cut more timber than he had a right to cut, and admit that Leidesdorff had a Mexican grant, but deny that it embraces the land in suit, or that Leidesdorff ever owned it.

One of the defendants avers, that he is in possession of one hundred and sixty acres of the land for mining purposes; that the land is valuable chiefly for the gold it contains; and, that his oc-

cupancy is essential to his business of mining, etc.; but denies that he now is, or ever was, in possession of land owned by Leidesdorff.

*Thomas Sunderland* and *A. P. Catlin*, for Appellants.

I. The copy of the grant certified by the U. S. Surveyor-General was admissible in evidence under the statute. (Act 1857, p. 317.) No objection was taken below, except that the absence of the original was not accounted for, and objections in this Court must be limited to this one point. The certificate is sufficient. Independent of the statute, the copy was admissible upon affidavit, that the original was in possession of the Surveyor-General, and that he would furnish nothing but a copy. (*Hensley* v. *Tarpey*, 7 Cal. 288.)

II. The government being the source of title to all lands, the decree of the United States District Court was admissible, and is conclusive against the United States, and all persons claiming under, or setting up, title in the government. (*Sanders* v. *Whitesides*, 10 Cal. 88; 9 U. S. Stat. at Large, 634; *Gregory* v. *McPherson*, 13 Cal. 562.)

III. The decree of final confirmation, and the survey under that decree, approved by the Surveyor-General, were sufficient to authorize a recovery in ejectment for any land within the approved survey. (*Norton* v. *Hyatt*, 8 Cal. 539; *Rose* v. *Davis*, 11 Id. 133; *Waterman* v. *Smith*, 13 Id. 373; *Moore* v. *Wilkinson*, Id. 478.)

IV. The injunction having been granted upon notice and after hearing, ought not to have been dissolved. (Practice Act, Secs. 118, 119.) It never was the practice, either before or since the statute, to dissolve injunctions, except when they were granted on an *ex parte* showing.

V. The injunction being to restrain the committing and threatening of irreparable mischief, ought not to be dissolved upon the qualified and insufficient denials of plaintiffs' bill contained in the answers. Courts of Equity interfere by injunction to restrain waste or trespass where the title is in dispute, and the right is doubtful. (*Spear* v. *Cutler*, 5 Barb. 486; *Livingston* v. *Livingston*, 6 John. Ch. 202; *Merced Mining Co.* v. *Fremont*, 7 Cal. 317.)

Where the plaintiff claimed under a Spanish grant which was not yet surveyed, and the *locus in quo* was disputed by the defendant to be in the boundary of the grant, the injunction was continued restraining the cutting of trees, on the ground of the irreparable nature of the injuries. (*Buckelew* v. *Estell*, 5 Cal. 108; *Roberts* v. *Anderson*, 2 John. Ch. 204; *Apthorpe* v. *Comstock*, Hopk. 148; *Ward* v. *Van Bokkelin*, 1 Paige, 100.)

In cases of special injunctions against irreparable mischief in the nature of waste, the defense must set up affirmative and positive equity. (*United States* v. *John Parrott et als.* 1 McAllister's C. C. R.)

*W. S. Long*, for Respondents.

I.   When the answer denies all the equity of the bill, the injunction should be dissolved. (*Crandall* v. *Wood*, 6 Cal. 449; *Gardner* v. *Perkins*, 9 Id. 553; *Baker* v. *Scannel*, 13 Id.; 1 Eden on Injunction, 146, Note 1; 1 J. C. R. 211; 2 Id. 205; 4 Id. 31.)

II.   The injunction should not be granted when the plaintiff has his remedy at law. The bill in this case does not aver insolvency, and the plaintiffs' remedy at law is full and complete.

III.   The Court did not err in excluding the copies of the grant and the decree of the United States District Court and Board of Land Commissioners.

IV.   The plaintiffs, as a corporation, cannot own any more land than is necessary to carry out the purposes of their incorporation; and it was not shown that the land in controversy was necessary for any of those purposes. (Sugden on Vendors, 884; 2 Kent, 6th Ed. 282, 283; 1 Cruise's Dig. Tit. 1, Sec. 40, Note 54; Angel on Corporations, Ch. 5; Dart on Vendors, 8; 14 Pet. 122; 2 How. 127; 3 Pick. 232; 8 Id. 422; 8 Dana, 114; 1 Watts, 218.)

FIELD, C. J. delivered the opinion of the Court—BALDWIN, J. and COPE, J. concurring.

The complaint in this case seeks a recovery of certain premises, situated within Sacramento County, as in an ordinary action of ejectment; and also, an injunction to restrain the commission of

trespass in the nature of waste, pending the action. This blend-
ing of an action at law, with a petition for ancillary relief to the
equity side of the Court, is admissible under our system of prac-
tice.   But to prevent confusion, and preserve the simplicity and
directness requisite in the averments of a complaint in an action
at law, the grounds of equity interposition should be stated sub-
sequently to, and distinct from, those upon which the judgment
at law is sought.  It would be the better practice, in such case,
to commence that portion of the complaint which seeks the equi-
table relief, with the form :  " and for equitable relief, pending
the above action, the plaintiff further represents;" or, " and, for
a further cause of action, the plaintiff represents."

The principal acts charged as trespasses, for the restraint of
which the injunction is sought, consist in cutting, destroying,
and carrying away, wood and growing timber, which are al-
leged to be of great value for farming, building, and other pur-
poses, and to constitute the chief value of a portion of the prem-
ises.

Upon the answers of the defendants, and on their motion the
injunction, originally granted on the complaint upon an order to
show cause, was dissolved.  To recover in the ejectment, the
plaintiffs relied upon a grant from the Mexican Government to
Wm. A. Leidesdorff, from which they derive title.  The grant
was issued by the Mexican Governor, Micheltorena, in October,
1844, and the claim under it was presented to the U. S. Board of
Land Commissioners for confirmation, and was by the Board ad-
judged to be valid, and confirmed in June, 1855.  The case being
removed by appeal to the United States District Court, the At-
torney-General gave notice that the appeal would not be further
prosecuted, and upon the stipulation of the District Attorney, in
pursuance of such notice, the claimants, by order of the District
Court, made in April, 1857, had leave to proceed upon the decree
of the Commission, as upon a final decree.  The grant, with the
accompanying papers, describes the land as lying on the Ameri-
can River, adjoining land previously granted to the colony of
Sutter.  The decree of the Commission confines the claim, under
the grant, to a particular tract, describing it with specific bound-
aries.  On the trial, the plaintiffs gave in evidence, without ob-
jection, the petition of Leidesdorff for the land, and the several

proceedings previous to the issuing of the grant, and then offered
a copy of the grant, the decree of the Board, and the order of
the District Court—the first two papers certified as correct by
the Surveyor-General, and the other by the Clerk of the Court.
Previous to the offer, a witness on the part of the plaintiffs testi-
fied, that he had seen the original grant in the office of the Sur-
veyor-General, and that it was still there among the archives
of the office; and a witness on the part of the defendants, that he
had seen the same on file in the office of the Land Commission,
and that the papers of the Commission had been sent in 1856,
under an Act of Congress, to the office of the Surveyor-General.
To the introduction of the copy of the grant objection was made,
on the ground, that it was not duly authenticated, and the ab-
sence of the original was not accounted for, and to copies of the
decrees objection was made that they were irrelevant. The sev-
eral objections were sustained, and the papers excluded, under
the exception of the plaintiffs. Some further evidence being
offered and rejected as irrelevant, the plaintiffs consented to take
a nonsuit, with leave to move to set the same aside. The motion
subsequently made was overruled, and judgment of nonsuit en-
tered. From the order refusing the motion and the judgment,
the appeal is taken.

The point, that the nonsuit, being taken by consent, excludes
the consideration of the exceptions, is untenable. The liberty
reserved to move to set the same aside, conserved to the plain-
tiffs all their rights. The course pursued in this case is often
adopted, when it is evident, from the rulings of the Court, that
the plaintiff cannot recover, and a motion for nonsuit is not made
by the adverse party.

The objection to the admission of the certified copy of the
grant should have been overruled. The objection was not placed
at the trial, on the ground taken in this Court, that the paper
does not purport to be a copy of the original, and we must con-
fine our consideration to the specific point urged in the Court
below.

By Act of Congress the papers belonging to the United States
Board of Land Commissioners were transferred, as stated by
one of the witnesses, to the custody of the Surveyor-General
for California in 1856; and by the first section of the Act of the

Legislature of this State " concerning certified copies of certain instruments in writing," passed in 1857, (Ses. Laws, Ch. 254,) it is provided that "copies of all papers lately belonging to the United States Board of Commissioners for the settlement of private land claims in California, and on file in the office of the Surveyor-General of the United States for the State of California, and all copies of documents and papers belonging to said Surveyor's office, which copies shall have been duly certified to be true copies by said Surveyor, shall be received and read in evidence in the same manner and with like effect as the originals."

The certificate of the Surveyor-General in the present case is that the paper " is a true and accurate copy of a document" on file in his office. The objection might have been taken that the certificate does not purport that the paper is a copy of an *original* document, but, as we have observed, no such objection was urged; on the contrary, it appears to have been conceded on the trial that the document referred to was the original grant, and to show that such original was on file in the office of the Surveyor-General, the witnesses were examined. This being the case, the ruling of the Court was clearly erroneous. The certificate states the paper to be a true copy, and thus complies, in form, with the provisions of the statute.

On what ground the final decree of the Commission and the order of the District Court were held to be irrelevant testimony, we are unable to perceive. The right of the plaintiffs to recover, is based upon the grant of the Mexican Government. The decree of the Commission, rendered final by the withdrawal on the part of the United States of any appeal therefrom, is not only conclusive evidence of the validity of such grant, and of its recognition by the United States, but also of the location of the specific quantity granted. Against its effect, neither the government, or any parties claiming under the government, could ever assert any rights. So far, then, from being irrelevant, the decree with its specific boundaries, and the order of the District Court granting leave to the claimants, under the stipulation of the officers of the government, to proceed thereupon as upon a final decree, were, in the highest sense, relevant and material. They were, in fact, taken in connection with the grant, conclu-

sive of the right of the plaintiffs to recover, provided the premises in controversy were within the designated boundaries. A patent of the United States could have no greater effect upon the title; the patent would, indeed, save the parties the necessity of proving anything beyond it, and limit the evidence in the case to matters arising upon mesne conveyances under the original grantee, but so far as the title is concerned—the boundaries of the land being given—its segregation, in other words, from the public domain being made by the decree itself, nothing further could be required.

It follows, that the judgment must be reversed, and it only remains to consider the question whether the injunction was properly dissolved.

It appears that, upon filing the complaint, an order was issued to the defendants, to show cause why an injunction, as prayed for, should not be issued, and upon the return of the order cause was shown, which being deemed insufficient, the injunction was granted. Subsequently, upon the filing of the answer, a motion for dissolution was made and sustained. In its ruling in this respect the Court below erred. By the statute the right to a temporary injunction pending the action is considered as adjudicated by the decision at the hearing upon the order to show cause. The remedy of the defendants in such case, when the right to apply for dissolution upon the filing of the answer is not expressly reserved, is by appeal. The privilege of moving for dissolution, upon the filing of the answer, is limited to cases where the injunction is originally granted without notice to the adverse party. (See Practice Act, Sec. 118.)

In the present case no question is made as to the right of the plaintiffs to an injunction upon the undenied allegations of the complaint. In our judgment the right to the preventive remedy was unquestionable. The cutting, destroying, and removing, of growing timber on the premises in controversy constituted, without other matter, sufficient ground for the issuance of the writ.

The judgment must be reversed and the cause remanded for a new trial, and the injunction must be restored until the final determination of the case, when the propriety of dissolving it,

or of rendering it perpetual, will be determined according to the judgment in the ejectment.

Ordered accordingly.

On petition for rehearing, the following opinion was delivered by FIELD, C. J.—BALDWIN, J. and COPE, J. concurring:

There are no considerations presented in the petition for a rehearing, which can lead to a reversal of our former judgment in this case. It is of no consequence that the document, of which a certified copy was offered in evidence, was annexed to the deposition of Sutter, before the Land Commission—it being conceded that such document was the original grant. The copy, under these circumstances, was as admissible as the original would have been, had it been produced. No point was made, either in this Court, or the Court below, as to the admissibility of the original, without proof of its genuineness and due execution, and no opinion was required or expressed thereon. The statute does not authorize copies to be received and read, when the originals themselves would be inadmissible. It only places the copies, as evidence, on a footing with the originals; in other words, it obviates the objection to the copies as secondary evidence. In this case, it being conceded that the document was the original grant, and no point being taken upon the admissibility of such original, the copy should have been received.

The plaintiffs are an incorporated company, under the Act of April 14th, 1853, by the 4th Section of which they are authorized "to purchase, hold, sell, and convey, such real and personal estate, as the purposes of the corporation shall require." Whether or not the premises in controversy are necessary for those purposes, it is not material to inquire; that is a matter between the government and the corporation, and is no concern of the defendants. It would lead to infinite inconveniences and embarrassments, if, in suits by corporations, to recover the possession of their property, inquiries were permitted as to the necessity of such property for the purposes of their incorporation, and the title made to rest upon the existence of that necessity. (See *The Banks* v. *Poiteaux*, 3 Rand. 136, and Angell & Ames on Corporations, 113—121.)

Rehearing denied.